UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LANYGEA LASANE, MYNIASHAZA SCOTT, and
MONIQUE MORENE as mother and Natural Guardian
Of C.M. (age 17),

                               Plaintiffs

          -against-

THE CITY OF NEW YORK, POLICE OFFICER STAN
NOVA (Shield # 6442, PSA 1), and POLICE OFFICERS
SUPERVISORS and DETECTIVES JOHN and JANE
DOES 1-5,

                              Defendants.
-------------------------------------------------------------------X

**18 CV 1586**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs **LANYGEA LASANE, MYNIASHAZA SCOTT,** and **MONIQUE MORENE as Mother and Natural Guardian of C.M (age 17)**, by their attorney Joel Berger, Esq., for their complaint allege, upon information and belief, as follows:

### *NATURE OF THE ACTION*

1. This is an action to recover money damages arising out of the violation of plaintiffs' rights under the Constitution and laws of the United States and the State of New York, including false arrest and false imprisonment, by employees of the New York City Police Department (NYPD). Plaintiffs were arrested for allegedly trespassing in a public housing project building, even though they were invited guests of a resident of the building, the police confirmed with the resident who invited them that they were invited guests, and at no time were plaintiffs in any area of the building in which their presence was prohibited. The charges against plaintiffs were dismissed..

### *JURISDICTION AND VENUE*

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

## *PENDENT JURISDICTION*

5. This Court also has jurisdiction over plaintiff Lasane's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On May 16, 2017, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served on Ms. Lasane's behalf upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e. Claim No. 2017 PI 013932.

7. A hearing pursuant to GML § 50-H was conducted on October 13, 2017.

8. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

9. This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

## *JURY DEMAND*

10. Plaintiffs demand a trial by jury in this action.

## *PARTIES*

11. **LANYGEA LASANE, MYNIASHAZA SCOTT** and **C.M.** are citizens of the United States and residents of the State of New York. They are African-American teenagers. All are students – Lasane in college, Scott and C.M. in high school. None has criminal records of any kind.

12. Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

13. Defendant City of New York operates the NYPD, a department or agency of

defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers, supervisory police officers and other NYPD employees, including the individually named defendant herein.

14. At all times relevant herein, defendant Stan Nova was a police officer, Shield 6442, employed by the NYPD, assigned to the Police Service Area ("PSA") 1 in Brooklyn, NY.

15. At all times relevant herein, defendants John and Jane Does 1-5 were NYC police officers and/or supervisory police officers and/or detectives. Plaintiff does not at this time know the real names and shield numbers of John and Jane Does 1-5.

16. At all times relevant herein, defendants Nova and John and Jane Does 1-5 were acting as agents, servants and employees of defendant City of New York.

17. At all times relevant herein, all defendants were all acting under color of state law.

### *FACTS*

18. On February 22, 2017, at approximately 11:00 P.M., in 3012 Avenue W, a building of the Nostrand Houses of the New York City Housing Authority (NYCHA) located in the Sheepshead Bay neighborhood of Brooklyn. Lasane, Scott and C.M. were illegally arrested by New York City Police Officers.

19. Lasane was arrested by Stan Nova, Shield 6442, assigned to Police Service Area (PSA) 1. Scott and C.M. were arrested either by Nova or by other officers from PSA 1.

20. At the time of the arrest Lasane, Scott, and C.M were all high school students. Scott and C.M. are still in high school. Lasane is now attending college

21. Lasane lives in another building of the Nostrand Houses, 2323 Batchelder Street,

directly across from 3012 Avenue W.

22. Scott lives on Staten Island but is friends with Lasane and C.M..

23. C.M. lives elsewhere in Brooklyn but is also friends with Lasane and Scott.

24. At the time and place of the arrest Lasane, Scott and C.M. were all invited guests visiting another friend, Elegance Wright, who lives at 3012 Avenue W, Apartment 6D (top floor).

25. February 22, 2017 was during the week of the City schools' midwinter break, and the three visitors and the woman they were visiting did not have school the next day. They planned to go out together that night.

26. Lasane, Scott and C.M. had entered 3012 Avenue W without incident and had proceeded to the 6th floor (the top floor) of the building where Ms. Wright lives.

27. The visitors called Ms. Wright when they got to her floor.

28. Ms. Wright advised her guests that she was about to finish getting dressed, that they should wait for her outside the apartment, and that she would join them momentarily for their evening out.

29. Because Ms. Wright was not yet ready, her invited guests waited for her in the area of a stairwell step in the immediate vicinity of apartment 6D.

30. The step in the stairwell at which they were located was not on the roof landing.

31. They waited for at most 10 minutes before the incident of this lawsuit occurred.

32. C.M. noticed that the door to the roof was open, and to secure the safety of his women companions and himself he went to see if anyone was there and to then close the door.

33. The door was stuck, but C.M. closed the door as best he could and then returned to

4

the step where the two women were waiting.

34. Suddenly all three visitors were accosted by PO Nova, a Caucasian police officer, and at least two other Caucasian police officers who entered the area from the roof.

35. The police officers claimed that the teenagers were trespassing and demanded to see their ID.

36. The teenagers showed the officers their ID and explained that they were visiting a friend.

37. The officers were not satisfied with this explanation, and announced that the three were under arrest for trespassing.

38. All three invited guests were ordered to place their hands behind their backs and were handcuffed.

39. The three black teenagers protested that they were invited guests and asked the Caucasian officers to confirm their status as such with Mr. Wright.

40. The officers and their handcuffed prisoners went to Ms. Wright's apartment to inquire.

41. The door was answered by Elegance Wright's father, Wallace Oliver, who confirmed that all three youngsters were in fact invited guests of his daughter.

42. At this time Ms. Wright also came to the door and asked the officers why her friends were handcuffed.

43. Ms. Wright confirmed that the three individuals in handcuffs were her invited guests, that they had been waiting for her and that she had been just about to leave the apartment to join

them.

44. Nonetheless, PO Nova and the other officers, by then accompanied by three PSA 1 detectives, placed the handcuffed teenagers in a police van and took them to a police precinct.

45. At the precinct the three arrestees were imprisoned in a cage, photographed and fingerprinted. All three teenagers were charged with criminal trespass in the third degree, a class B misdemeanor (PL § 140.10 (e) -- criminal trespass in a public housing project building), and trespass, a violation (PL § 140.05 -- trespass in any premises).

46. The three youngsters, all law-abiding high school students who had never before been arrested, were extremely frightened.

47. Ms. Lasane's mother, Latanya Dixon, came to the precinct to protest the arrest.

48. The police ignored Ms. Dixon's protest and insisted on proceeding with the arrest.

49. At approximately 2:00 A.M. on February 23, 2017, after the teenagers had been imprisoned for approximately three hours, Nova issued a Desk Appearance Ticket requiring Lasane to appear in Brooklyn Criminal Court on April 24, 2017, and Nova or one of his PSA 1 colleagues issued similar Desk Appearance Tickets to Scott and C.M..

50. Nova filled out a supporting deposition form falsely swearing that he had observed Ms. Lasane loitering on a roof landing.

51. Lasane and Scott were never on the roof landing. There are steps leading up to the roof landing, which is on a higher level than where plaintiffs were waiting for Ms. Wright. Lasane and Scott were not on those steps, let alone at the top of those steps.

52. C.M. was momentarily on the roof landing, but only for the legitimate and lawful

purpose of attempting to close the roof door for his safety and the safety of his female companions.

53. The three youngsters were not loitering. Nova confirmed with Ms. Wright and Ms. Wright's father that they were legitimate guests who were simply waiting for the person who had invited them to get ready.

54. Nova and the other officers knew that the three teenagers were not trespassing and were not loitering, but swore to that anyhow in order to justify the illegal arrests.

55. Nova also filled out the supporting deposition form in Lasane's case in a grossly misleading manner that made a mockery of the form's purpose. The form asks "If the defendant said he lived in or was visiting someone in the building, how was it established that this was not true (e.g., checked the tenant rolls, spoke to resident of the apartment defendant claimed he was visiting, etc.) (Give name and Apt. # of person spoken to)." Nova's response to this inquiry was merely "Defendant was on roof landing."

56. Nova deliberately did not mention that he had spoken to resident Elegance Wright's father, Wallace Oliver, and to Ms Wright herself, both of whom had confirmed that the arrested teenagers were invited guests.

57. When Lasane appeared in Brooklyn Criminal Court on April 24, 2017, she was confronted with a hearsay Criminal Court complaint sworn to by Legal Assistant Asif Hossain of the District Attorney's Office falsely alleging that according to Nova's supporting deposition Lasane had been "on the rooftop" of 3012 Avenue W.

58. The hearsay Criminal Court complaint further cites the supporting deposition for the claims that "defendant was unable to provide a legitimate reason for defendant's presence in the

7

above premises" and "defendant did not have permission or authority to enter or remain in the premises," when in fact Nova had confirmed that Lasane was a legitimate invited guest of a resident of the building and had permission from that resident to be on the premises.

59. Upon information and belief, the supporting documents filed by police and the District Attorney's office in the cases of Scott and C.M. contained identical or similar falsehoods.

60. In light of the highly dubious nature of the charges and the fact that the defendant teenagers had no prior criminal record of any kind, the prosecution on April 24 agreed to dismissal of the charges against all three pursuant to CPL § 170.55 (Adjournment in Contemplation of Dismissal, or "ACD") The prosecution even agreed to shorten the period before the case was sealed to 3 months for Lasane and Scott instead of the statutory 6 months.

61. CPL § 170.55 specifies that an ACD is not a guilty plea or an admission of guilt, and at no time have the arrested teenagers admitted to being illegally on the roof or roof landing or being in 3012 Avenue W without permission or authority.

62. The youngsters' temporary use of a stairwell stair to sit down while awaiting the friend who invited them was not even arguably trespass within the meaning of the Penal Law and was not cited as the basis for the arrest in the supporting depositions or the Criminal Court complaints.

63. At the time of the incident there was no signage in the area of the arrest stating that residents or visitors were prohibited from being in the stairwell area.

64. At the time of the incident there was no signage in the area of the arrest stating that residents or visitors were prohibited from being on the roof landing.

65. At the time of the incident there was no signage in the area of the arrest stating that residents or visitors were prohibited from being on the roof of the building.

66. One or more NYPD PSA 1 supervisors, or the PSA 1 detectives who came to the scene, had to approve the determination to arrest and imprison the three teenagers and to criminally charge them with trespassing.

67. Nova and his colleagues necessarily obtained the approval(s) from supervisor(s) or detectives including one or more of the defendants John and Jane Does.

68. The arrests and criminal charges complained of herein were effectuated in violation of NYPD policy, which requires officers to respect the rights of invited guests of NYCHA residents.

69. The arrests and criminal charges complained of herein were effectuated in violation numerous provisions of NYPD Patrol Guide 212-60 and its predecessor, Interim Operations Order # 23, which protects invited guests from arrest under the circumstances present in this case.

### *FIRST CLAIM FOR RELIEF*

70. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-69.

71. Defendants, by their conduct toward plaintiffs alleged herein, violated plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *SECOND CLAIM FOR RELIEF*

72. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-69 and 71.

73. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers, detectives and supervisory officers.

74. The failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers, detectives and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

75. The official policies, practices and customs of the City of New York and the NYPD, alleged in ¶¶ 1-55, 57 and 59-60 violated plaintiffs' rights guaranteed by 42 USC § 1983, 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *THIRD CLAIM FOR RELIEF*

76. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-69, 71 and 73-75.

77. The conduct toward plaintiffs alleged herein constituted false arrest, false imprisonment, racial discrimination and employee negligence.

78. The conduct toward plaintiffs alleged herein subjected them to trauma, shock, debasement, shame, fright, fear, humiliation, embarrassment, loss of physical freedom, harassment, and psychological and emotional injury, trauma, pain, and suffering.

### *FOURTH CLAIM FOR RELIEF*

79. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-69, 71, 73-75, and 77-78.

80. At all times relevant herein, the individual defendants were on duty and were acting

within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiffs respectfully requests judgment against defendants as follows:

(a)   Compensatory damages against all defendants, jointly and severally;

(b)   Punitive damages against all individual defendants, jointly and severally;

(c)   Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d)   Such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         March 14, 2018

/s/ Joel Berger
**JOEL BERGER**
360 Lexington Avenue, 16th Fl.
New York, New York 10017
(212) 687-1425

**ATTORNEY FOR PLAINTIFFS**